IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACOBO SIMKIN, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>PUFF BAR,<br><br>      Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jacobo Simkin ("Plaintiff") brings this action individually and on behalf of all others similarly situated against Puff Bar ("Defendant") for its manufacturing, marketing, and sale of its Puff Plus vapes. Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## INTRODUCTION

1. The United States has been battling to curtail its citizens' addiction to cigarettes for over a century. By 2014, cigarette usage hit its all-time low in the nation's history. This progress, however, took an unexpected turn when e-cigarettes were first introduced into the market. While e-cigarettes were initially developed to help adults wean off regular cigarette use, manufacturers exploited their already widespread appeal by creating fruit and candy-flavored products, leading to a youth nicotine epidemic—it is estimated that approximately 40% of high school students use e-cigarettes.[1]

---

[1] https://www.fda.gov/tobacco-products/youth-and-tobacco/youth-tobacco-use-results-national-youth-tobacco-survey (last accessed August 25, 2021).

2. In an effort to stop the epidemic, the FDA issued a ban on flavored e-cigarette pods and cartridges. The ban, however, carved out an exemption for disposable e-cigarettes. Defendant, a disposable e-cigarette company that launched in 2019, exploited this loophole to the fullest. With an assortment of various e-cigarettes ("vape") fruit flavors, Defendant quickly rose to the top of the e-cigarette industry, reaping hundreds of millions of dollars along the way.

3. In addition to its reckless disregard for the widespread youth nicotine epidemic, Defendant also engaged in deceptive sale and marketing tactics. Defendant gained a fortune in its quick proliferation of misbranded vapes, all while working around the FDA's intention to shut down its operations for failing to comply with pre-market authorization requirements.[2]

4. Plaintiff brings this class action to remedy Defendant's deceptive marketing and sales tactics for one of its most popular vapes: Puff Plus (the "Puff Bar Plus"). In selling the Puff Bar Plus, Defendant sought a competitive advantage by promising that the vape will last "800 PUFFS." This longevity representation is prominently made on the front label of the Puff Bar Plus packaging and is conspicuously visible to every consumer at the point of purchase. In reliance on that representation, consumers paid, and continue to pay, a premium for the Puff Bar Plus. As set forth more fully below, Defendant's representation far out-promises the actual lifespan of the Puff Bar Plus—which in many instances fails within hours after being purchased.

5. Plaintiff purchased Puff Bar Plus vapes based on Defendant's misleading and fraudulent representation regarding the vapes' longevity.

6. Plaintiff seeks relief in this action on behalf of himself and similarly situated class members for Defendant's violations of state consumer protection laws and breach of the express warranties displayed on the Puff Bar Plus packaging.

---

[2] https://www.fda.gov/news-events/press-announcements/fda-notifies-companies-including-puff-bar-remove-flavored-disposable-e-cigarettes-and-youth (last accessed August 20, 2021).

**THE PARTIES**

7. Plaintiff Jacobo Simkin resides in New York, New York. During the first quarter of 2020, Plaintiff purchased Puff Bar Plus vapes from various retail stores in New York, New York, believing that the vapes would afford him the "800 PUFFS" promised on their packaging. After his college closed down due to COVID-19 restrictions, Plaintiff temporarily moved to Miami, Florida, where he made additional Puff Bar Plus purchases from local retail stores approximately until August of 2020.

8. Initially, Plaintiff became frustrated when his Puff Bar Plus vapes ran out of battery well before 800 puffs. Plaintiff, nonetheless, continued to purchase other Puff Bar Plus vapes believing that such failures were the result of one-off manufacturing flukes. After giving the Puff Bar Plus vapes the benefit of the doubt, however, Plaintiff stopped purchasing them altogether when he realized that the vapes failed to live up to their "800 PUFFS" representation on a consistent basis. For example, on a couple of occasions, the Puff Bur Plus vapes that Plaintiff bought ran out of battery within an hour or two after he first began using them. Aware of potential counterfeits, Plaintiff verified that the Puff Bar Plus vapes were authentic by checking the authentication code displayed on their packages—the vapes belonged to Defendant. Although Plaintiff no longer trusts that Defendant's Puff Bar Plus vapes will give him "800 PUFFS," he would nevertheless consider purchasing them in the future if Defendant remedies the vapes defect or otherwise addresses their false advertising.

9. Defendant Puff Bar is a California corporation, having its principal place of business in Glendale, California. Puff Bar manufactures, designs, sells, markets, promotes, and distributes Puff Bar Plus and other Puff Bar products throughout the United States. At all relevant times herein, Puff Bar purposefully marketed and sold its products to citizens of the State of New York and Florida.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant

11. This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the privilege of conducting business activities in this State. Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this State, including Plaintiff's various purchases of the Puff Bar Plus at issue in this case.

12. This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to Plaintiff's claims herein occurred in this District. Moreover, Plaintiff resides in this District and, on several occasions throughout the first quarter of 2020, purchased Defendant's Puff Bar Plus vapes in this District.

## COMMON FACTUAL ALLEGATIONS

13. On the front label of the Puff Bar Plus packaging, Defendant conspicuously represents to consumers that the vape provides them "800 PUFFS." Similarly, on the vape's back label, Defendant represents that the Puff Bar Plus contains "Puffs: Up to 800."




14. By representing that the Puff Bur Plus provides "800 PUFFS"—a very specific number—Defendant induced Plaintiff and the proposed class members into purchasing the vapes at a premium.

15. However, despite this representation, Defendant's Puff Bar Plus systemically fails well before consumers are able to take 800 puffs. In fact, the Puff Bar Plus often runs out of battery within a few hours after being unpacked.[3]

16. Defendant knew or should have known that its Puff Bur Plus did not live up to its "800 PUFFS" representation based on dozens of reviews posted on its own website, www.puffbar.com, which Defendant actively monitors.

17. For example, in 2020, a verified buyer explained his issue with a "Lychee Ice" flavored Puff Bur Plus: "box said there would be 800 hits and i couldn't have gotten more than 200."[4]



---

[3] Although under 2nd Circuit precedent in *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018) reasonable consumers are not "expected to look beyond misleading representations on the front of the box" to cure a Defendant's misrepresentation contained therein, the back label of the Puff Bar Plus is as equally misleading as its front label. Specifically, in the "Puffs: Up To 800" back label representation, the "800" provides what is known in consumer research as an "anchor." The "Up To" is known in the same research as an "adjustment." However, research has shown that adjustments like "Up To" are insufficient and lead to estimates that are biased in the direction of the initial anchor point—800 Puffs. (Slovic, Fischoff, and Lichtenstein, 1982); (Biswas and Burton 1994) (when asked what the maximum amount of the discount that would be expected when the "save up to 40%" option was presented, 80% of the respondents estimated that the maximum level of the actual discount would be 40-49%). In other words, consumers are biased toward the 800 Puffs anchor from the statement "Puffs: Up to 800" and interpret it to mean that they would get 800 Puffs from their Puff Bar Plus vapes. Defendant's Puff Bar Plus vapes, which fail to hold a charge for long, and then not at all, do not provide the expected 800 puffs longevity. As a result, Defendant's back label representations are equally false and misleading to consumers.
[4] https://web.archive.org/web/20200612165731/https://puffbar.com/collections/enjoy-puff-plus-7-flavors/products/puff-bar-plus-lychee-ice (last accessed August 23, 2021).

18. Another dissatisfied consumer posted a review stating that his "Peach Ice" flavored Puff Bar Plus "didn't last as long as advertised"[5]



19. Yet another dissatisfied consumer posted a review stating that his "Mixed Berries" flavored Puff Bar Plus "died when there was still juice in the cotton."[6]



20. Finally, another dissatisfied consumer posted a review stating that her "Cool Mint" flavored Puff Bar Plus "went out within a night. Just stopped working."[7]



21. Aside from Defendant's website, consumers across the country voiced their dissatisfaction regarding the Puff Bar Plus longevity on social media outlets. Among other threads on the popular social medial platform called Reddit, one thread captioned "Puff Plus battery life is a joke" contains 45 comments of dissatisfied consumers.[8]

---

[5] https://web.archive.org/web/20200612165344/https://puffbar.com/collections/enjoy-puff-plus-7-flavors/products/peach-ice-puff-bar-plus (last accessed August 23, 2021).
[6] https://web.archive.org/web/20200317233106/https://puffbar.com/collections/enjoy-puff-plus-7-flavors/products/mixed-berries-puff-bar-plus (last accessed August 23, 2021).
[7] https://web.archive.org/web/20200612165116/https://puffbar.com/collections/enjoy-puff-plus-7-flavors/products/cool-mint-puff-bar-plus
[8] https://www.reddit.com/r/Puffbar/comments/g02ol3/puff_plus_battery_life_is_a_joke/ (last accessed August 23, 2021).

22. Defendant knew that its "800 PUFFS" representation regarding the Puff Bar Plus was false and misleading. Specifically, after Defendant's relaunched its website in February of 2021 (after a temporary hiatus due to the FDA's scrutiny of the company) Defendant addressed the issues regarding the longevity of its vapes in the "FAQ" tab of the website. There, Defendant reaffirmed that the Puff Bar Plus contains "a bigger 550 mAh battery that gives you up to 800 puffs!" but advised its consumers that "the bottom line is your usage will vary depending on your vaping habits."[9] As a result, Defendant recommended the following to make the Puff Bar Plus last as long as it should:

> **Take Smaller Hits**: When you take smaller hits from your Puff Bar, you can actually make it last longer. This is because shorter, smaller hits keep the cotton wicking system that holds the nicotine from drying out too quickly. You may think you're getting the most for your money when you take long, deep puffs, and we get it. But the truth is it places a greater demand on the battery, and longer hits can heat the wick more and make it dry out faster.[10]

23. Despite its acknowledgment that the Puff Bar Plus cannot reliably provide "800 PUFFS" due to technical issues unbeknownst to a regular consumer, Defendant failed to provide that disclosure anywhere in the Puff Bar Plus packaging—the only advertisement that Plaintiff, and most other consumers, were privy to when they purchased Defendant's vapes in retail stores across the country.

24. Furthermore, at all relevant times herein, Defendant's website failed to disclose that the Puff Bar Plus's longevity would vary based on how its consumers used the vape. Instead, the previous FAQ tab on Defendant's website stated that "[t]he length of time a Puff Bar lasts

---

[9] https://puffbar.com/blogs/vape-news/how-long-does-a-puff-bar-last-and-how-can-you-make-it-last-longer (last accessed August 23, 2021).
[10] *Id.*

8

depends on which of the two types of devices you're using: the original Puff Bar device or the Puff Bar Plus."[11]

25. As such, even if Plaintiff had visited Defendant's website before he purchased the Puff Bar Plus vapes, which he did not, neither he nor the proposed class members would have discovered that the "800 PUFFS" guarantee was conditioned on the highly technical interaction of their vaping habits with the mechanical intricacies of the Puff Bar Plus vapes. Instead, Plaintiff reasonably believed that the Puff Bar Plus longevity would conform to the "800 PUFFS" guarantee evidenced on the vape's packaging—which, as set forth above, routinely failed by substantial margins.

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action on behalf of himself and all other similarly situated persons pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3).

27. The class periods shall be defined from the date of the filing of this Complaint, back to any such time the Court deems appropriate.

28. Plaintiff seeks to represent all persons in the United States who purchased Defendant's Puff Bar Plus (the "Class").

29. Plaintiff also seeks to represent a subclass of all Class members who purchased Defendant's Puff Bar Plus in New York (the "New York Subclass") and in Florida (the "Florida Subclass") (collectively with the Class, the "Classes").

---

[11] https://web.archive.org/web/20200612161946/https://puffbar.com/blogs/vape-news/how-long-does-a-puff-bar-last-and-how-can-you-make-it-last-longer (last accessed August 23, 2021). Although the website recommended for Defendant's consumers to take "shorter hits" in order to prevent "the wicking system in your device from drying out too quickly" and to reduce "demand on the battery" it did so within the context of "how to make a Puff Bar last longer." Conversely, nothing in that disclosure would have placed a reasonable consumer on notice that taking longer hits would make the Puff Bar Plus vape come short of its "800 PUFFS" guarantee.

9

30. The Classes do not include (1) persons who purchased Defendant's Puff Bar Plus for the purpose of resale; (2) Defendant, its officers, and/or its directors; or (3) the Judge to whom this case is assigned and the Judge's staff.

31. Plaintiff reserves the right to amend the above class definitions and add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

32. *Community of Interest*: There is a well-defined community of interest among members of the Classes, and the disposition of the claims of these members of the Classes in a single action will provide substantial benefits to all parties and to the Court.

33. **Numerosity**: While the exact number of members of the Classes is unknown to Plaintiff at this time and can only be determined by appropriate discovery, upon information and belief, members of the Classes number in the millions. The precise number of members of the Classes and their identities are unknown to Plaintiff at this time but may be determined through discovery. Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

34. **Existence and predominance of common questions of law and fact:** Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individuals of the Classes. These common legal and factual questions include, but are not limited to:

(a) Whether the Puff Bar Plus is defective;

(b) Whether Defendant knew of the Puff Bar Plus's defective nature;

(c) Whether Defendant breached the express warranties on the Puff Bar Plus packaging;

(d) Whether Defendant's representation that the Puff Bar Plus has a longevity of "800 PUFFS" is false and misleading in violation of New York's and Florida's consumer-protection statutes;

(e) Whether Plaintiff and the members of the Classes have suffered damages as a result of Defendant's actions and the amount thereof;

(f) Whether Plaintiff and the members of the Classes are entitled to statutory damages;

(g) Whether Plaintiff and the members of the Classes are entitled to restitution;

(h) Whether Plaintiff and the members of the Classes are entitled to injunctive relief to enjoin Defendant from further engaging in these wrongful practices; and

(i) Whether Plaintiff and the members of the Classes are entitled to attorney's fees and costs.

35. *Typicality:* The claims of the named Plaintiff are typical of the claims of other members of the Classes in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased Defendant's defective Puff Bar Plus, and suffered a loss as a result of that purchase.

36. *Adequacy*: Plaintiff will fairly and adequately represent and protect the interests of the Classes as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff is an adequate representative of the Classes because he has no interests which are adverse to the interests of the members of the Classes. Plaintiff is committed to the vigorous prosecution of this action and, to that end, Plaintiff has retained skilled and experienced counsel, and by providing a cure-notice to Defendant regarding the Puff Bar Plus defects on behalf of the members of the Classes to protect their interests.

37.     **Superiority:** A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

(a) The expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek to redress their claims other than through the procedure of a class action;

(b) If separate actions were brought by individual members of the Classes, the resulting duplicity of lawsuits would cause members to seek to redress their claims other than through the procedure of a class action; and

(c) Absent a class action, Defendant likely will retain the benefits of its wrongdoing, and there would be a failure of justice.

## CAUSES OF ACTION

### COUNT I
### Violation of The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*
### (On Behalf of Plaintiff and the Class)

38.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

39.     Puff Bar Plus vapes are consumer products as defined in 15 U.S.C. § 2301(1).

40.     Plaintiff and the Class members are consumers as defined in 15 U.S.C. § 2301(3).

41.     Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

42.     Defendant provided Plaintiff and Class "written warranties" in the Puff Bar Plus packaging within the meaning of 15 U.S.C. § 2301(6)(A).

43.     15 U.S.C. § 2310(d)(3)(C) is satisfied because Plaintiff properly invokes jurisdiction under the Class Action Fairness Act ("CAFA").

44. 15 U.S.C. § 2310(e) is satisfied because Plaintiff provided Defendant a reasonable opportunity to cure the defects contained in the Puff Bar Plus by sending Defendant a cure notice outlining those defects in full via certified mail on July 20, 2021.

45. On the front label of the Puff Bar Plus packaging, Defendant expressly warranted that Puff Bar Plus provides "800 PUFFS."

46. That statement became the basis of the bargain for Plaintiff and the Class members because it is a factual statement that a reasonable consumer would consider material when purchasing a non-rechargeable disposable vape.

47. Defendant breached this express warranty by delivering Puff Bar Plus vapes that systematically failed to provide consumers 800 puffs.

48. As a direct and proximate result of Defendant's breach of its express written warranties, Plaintiff and the Class members have been damaged in an amount to be proven at trial.

## COUNT II
### Violation of New York G.B.L. § 349
### (On Behalf of Plaintiff and the New York Subclass)

49. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

50. New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

51. In its sale of Puff Bar Plus throughout the State of New York, at all relevant times herein, Defendant conducted business and trade within the meaning and intendment of New York's General Business Law § 349.

52. Plaintiff and members of the New York Subclass are consumers who purchased the Puff Bar Plus from Defendant for their personal use.

53. By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting the longevity of the Puff Bar Plus vapes on their packaging (i.e., that they would last "800 PUFFS.")

54. Furthermore, Defendant failed to provide adequate disclosures that the "800 PUFFS" guarantee was conditioned on the highly technical interaction between its consumers vaping habits and the mechanical intricacies of the Puff Bar Plus vapes.

55. The foregoing deceptive acts and practices were directed at consumers.

56. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the actual lifespan of the Puff Bar Plus vapes.

57. As a result of Defendant's deceptive practices, Plaintiff and the New York Subclass members suffered an economic injury because (a) they would not have purchased the Puff Bar Plus had they known that Defendant's representation regarding the longevity of the vape was false, and (b) they overpaid for the Puff Bar Plus on account of such misrepresentation.

58. On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

### COUNT III
### Violation of New York G.B.L. § 350
### (On Behalf of Plaintiff and the New York Subclass)

59. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

60. New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

61. Defendant violated New York General Business Law § 350 by falsely advertising on the Puff Bar Plus packaging that the Puff Bar Plus would provide consumers "800 PUFFS" when, in fact, it systematically failed to do so.

62. The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

63. Defendant's misrepresentation has resulted in consumer injury or harm to the public interest.

64. As a result of Defendant's false advertising, Plaintiff and the New York Subclass members suffered an economic injury because (a) they would not have purchased the Puff Bar Plus had they known that Defendant's representation regarding the longevity of the vape was false, and (b) they overpaid for the Puff Bar Plus on account of such misrepresentation.

65. On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

**COUNT IV**
**Violation of Florida's Deceptive and Unfair Trade Practices Act**
**Fla. Stat. § 501.201, *et seq.*, ("FDUTPA")**
**(On Behalf of Plaintiff and the Florida Subclass)**

66. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

67. Plaintiff and the Florida Subclass members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

68. By selling the Puff Bar Plus vapes throughout the state of Florida, Defendant engaged in "trade" or "commerce" within the meaning of Fla. Stat. § 501.203(8).

69. The FDUTPA provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. § 501.204(1).

70. By the acts and conduct alleged herein, Defendant engaged in unfair and deceptive acts and practices, which include, without limitation, misrepresenting on the Puff Bar Plus packaging that the Puff Bar Plus vapes would provide consumers "800 PUFFS" when, in fact, they systematically failed to do so.

71. Furthermore, Defendant failed to provide adequate disclosures that the "800 PUFFS" guarantee was conditioned on the highly technical interaction between its consumers vaping habits and the mechanical intricacies of the Puff Bar Plus vapes.

72. As a result of Defendant's deceptive practices, Plaintiff and the Florida Subclass members suffered an economic injury because (a) they would not have purchased the Puff Bar Plus had they known that Defendant's representation regarding the longevity of the vape was false, and (b) they overpaid for the Puff Bar Plus on account of such misrepresentation.

73. On behalf of himself and the Florida Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages, and reasonable attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Classes; and naming Plaintiff's attorney as Class Counsel to represent the Classes;

(b) For an order finding in favor of Plaintiff and the Classes on all counts asserted

herein;

    (c)    For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

    (d)    For prejudgment interest on all amounts awarded;

    (e)    For an order of restitution and all other forms of equitable monetary relief;

    (f)    For injunctive relief as pleaded or as the Court may deem proper; and

    (g)    For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: August 25, 2021        Respectfully submitted,

**GUCOVSCHI LAW, PLLC**

By:   */s/ Adrian Gucovschi*
        Adrian Gucovschi

Adrian Gucovschi
630 Fifth Avenue, Suite 2000
New York, NY 10111
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gucovschi-law.com

*Attorney for Plaintiff*