## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jacobo Simkin, individually and on behalf of all others similarly situated, | |
| | CASE NO. 1:21cv7177 |
| Plaintiff, | |
| | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| PUFF BAR and DS TECHNOLOGY LICENSING LLC, | |
| | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Jacobo Simkin ("Plaintiff") brings this action individually and on behalf of all others similarly situated against Puff Bar, DS Technology, LLC ("Defendants") for their manufacturing, marketing, and sale of their Puff Plus vapes. Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

### INTRODUCTION

1.      The United States has been battling to curtail its citizens' addiction to cigarettes for over a century. By 2014, cigarette usage hit its all-time low in the nation's history. This progress, however, took an unexpected turn when e-cigarettes were first introduced into the market. While e-cigarettes were initially developed to help adults wean off regular cigarette use, manufacturers exploited their already widespread appeal by creating fruit and candy-flavored products, leading

to a youth nicotine epidemic—it is estimated that approximately 40% of high school students use e-cigarettes.[1]

2.      In an effort to stop the epidemic, the FDA issued a ban on flavored e-cigarette pods and cartridges. The ban, however, carved out an exemption for disposable e-cigarettes. Defendants, a disposable e-cigarette company that launched in 2019, exploited this loophole to the fullest. With an assortment of various e-cigarettes ("vape") fruit flavors, Defendants quickly rose to the top of the e-cigarette industry, reaping hundreds of millions of dollars along the way.

3.      In addition to their reckless disregard for the widespread youth nicotine epidemic, Defendants also engaged in deceptive sale and marketing tactics. Defendants gained a fortune in their quick proliferation of misbranded vapes, all while working around the FDA's intention to shut down its operations for failing to comply with premarket authorization requirements.[2]

4.      Plaintiff brings this class action to remedy Defendants' deceptive marketing and sales tactics for one of its most popular vapes: Puff Plus (the "Puff Bar Plus"). In selling the Puff Bar Plus, Defendants sought a competitive advantage by promising that the vape will last "800 PUFFS." This longevity representation is prominently made on the front label of the Puff Bar Plus packaging and is conspicuously visible to every consumer at the point of purchase. In reliance on that representation, consumers paid, and continue to pay, a premium for the Puff Bar Plus. As set forth more fully below, Defendants' representation far out-promises the actual lifespan of the Puff Bar Plus—which in many instances fails within hours after being purchased.

5.      Plaintiff purchased Puff Bar Plus vapes based on Defendants' misleading and fraudulent representations regarding the vapes' longevity.

---

[1] https://www.fda.gov/tobacco-products/youth-and-tobacco/youth-tobacco-use-results-national-youth-tobacco-survey (last accessed August 25, 2021).
[2] https://www.fda.gov/news-events/press-announcements/fda-notifies-companies-including-puff-bar-remove-flavored-disposable-e-cigarettes-and-youth (last accessed August 20, 2021).

6.      Plaintiff seeks relief in this action on behalf of himself and similarly situated class members for Defendants' violations of state consumer protection laws and breach of the express warranties displayed on the Puff Bar Plus packaging.

## THE PARTIES

7.      Plaintiff Jacobo Simkin resides in New York, New York. During the first quarter of 2020, Plaintiff purchased Puff Bar Plus from friends who ordered Defendants' Puff Bar Plus while in New York from Defendant Puff Bar's website www.puffbar.com (the "Website") as well as from other retail stores in New York, New York. After his college closed down due to COVID-19 restrictions, Plaintiff temporarily moved to Miami, Florida, where he made additional Puff Bar Plus purchases from local retail stores approximately until August of 2020.

8.      Initially, Plaintiff became frustrated when his Puff Bar Plus vapes ran out of battery well before the "800 PUFFS" represented in their packaging. Plaintiff, nonetheless, continued to purchase other Puff Bar Plus vapes believing that such failures were the result of one-off manufacturing flukes. After giving the Puff Bar Plus vapes the benefit of the doubt, however, Plaintiff stopped purchasing them altogether when he realized that the vapes failed to live up to their "800 PUFFS" representation on a consistent basis. For example, on a couple of occasions, the Puff Bur Plus vapes that Plaintiff bought ran out of battery within an hour or two after he first began using them. Aware of potential counterfeits, Plaintiff verified that the Puff Bar Plus vapes were authentic from his purchases in New York and Florida by checking their authentication code displayed on their packages through Defendants' Website—the vapes belonged to Defendants. Plaintiff relied on Defendants' representations and warranties regarding the Puff Bar Plus's longevity in deciding to purchase his Puff Bar Plus products. Accordingly, those representations and warranties were part of the basis of the bargains, in that he would not have purchased Defendants' Puff Bar Plus products on the same terms had he known those representations and

warranties were not true. Additionally, in making his purchases, Plaintiff paid a substantial price premium due to the false and misleading longevity claim of the Puff Bar Plus. However, Plaintiff did not receive the benefit of his bargains because his Puff Bar Plus did not, in fact, afford him "800 PUFFS."

9.      Defendant DS Technology Licensing, LLC ("DS Tech") is a Delaware Limited Liability Company that previously owned the brand and distribution rights of the Puff Bar Plus at issue in this case. Upon information and belief, DS Tech authorized Defendant Puff Bar to distribute, market, and sell the Puff Bar Plus products at issue in this case directly to distributors and consumers in New York through Defendant Puff Bar's website www.puffbar.com (the "Website"). Furthermore, upon information and belief, Defendant DS Tech sold the Puff Bar Plus at issue in this case directly to distributors located in the state of New York. On or about May of 2020, DS Tech transferred all of its ownership rights to Defendant Puff Bar.

10.     Defendants Puff Bar is a California corporation, having its principal place of business in Glendale, California. Defendant Puff Bar designs, sells, markets, promotes, and distributes Puff Bar Plus and other Puff Bar products throughout the United States. At all relevant times herein, Defendant Puff Bar purposefully marketed and sold its products to citizens of the states of New York and Florida. Specifically, Defendant Puff Bar sold the Puff Bar Plus at issue in this case to wholesalers in New York via online applications through its Website.[3] To qualify as one of Defendants Puff Bar's wholesalers, Defendant Puff Bar required its applicants to disclose, among other things, the location and nature of their business—including their residence in the state of New York. Further, through internal investigations, Defendant Puff Bar approved numerous wholesalers to sell the Puff Bar Plus at issue in this case within the state of New York.

---

[3] https://web.archive.org/web/20200623230713/https://puffbar.com/pages/wholesale (last accessed November 19, 2021).

Exhibit A. By becoming an authorized wholesale distributor, Defendant Puff Bar guaranteed, *inter alia*, a consistent supply of products, fast shipping, and personal wholesale concierge services. *Id.* Defendant Puff Bar also provided wholesale distributors the option of becoming "authorized retailers" listed on the Website, although—upon information and belief—many applicants chose not to pursue that discretionary option. As of June of 2020, Defendant Puff Bar advertised at least three authorized retailers in New York on its Website.[4] Upon information and belief, Defendant Puff Bar advertised a greater amount of authorized retailers on its Website other than those listed in the two archived versions of its Website in June and September of 2020. Finally, Defendant Puff Bar's Website played a pivotal role in facilitating the transactions of New York consumers by allowing them to authenticate their purchases through the Website's authentication portal.[5] Upon information and belief, Defendant Puff Bar required consumers to disclose the state where they purchased the Puff Bar Plus at issue in this case and/or were otherwise capable of ascertaining the consumers' location based on the IP address of their devices.

11.    Because Defendant DS Tech and Puff Bar form a single economic enterprise in connection to their sales, marketing and distribution of the Puff Bar Plus at issue in this case—up until May of 2021 when Defendant Puff Bar acquired all ownership rights over the brand—they are jointly and severally liable for each one of the violations laid out in this Complaint under both alter ego and agency theories of vicarious liability.[6] As such, the below factual allegations refer to Defendants, collectively, in connection to the violations mentioned therein.

---

[4] https://web.archive.org/web/20200623230630/https://puffbar.com/pages/store-locator (lass accessed November 19, 2021).

[5] https://web.archive.org/web/20200612162344/https://verification.puffbar.com/ (last accessed November 19, 2021).

[6] Upon information and belief, Defendant DS Tech and Puff Bar (1) shared a joint bank account; (2) had an overlap in ownership, officers, directors, and personnel; and (3) shared a common office space, address and telephone numbers of corporate entities. Furthermore, upon information and belief, DS Tech supervised and/or had direct managerial discretion over Defendant Puff Bar's business operations. *See e.g.,* https://www.wsj.com/articles/the-27-year-old-friends-behind-puff-

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendants

13.     This Court has personal jurisdiction over Defendants under section 302(a)(1) of the New York Civil Practice Laws and Rules because Defendants purposefully availed themselves of the privilege of conducting business activities in this State by selling, marketing, promoting, and distributing the Puff Bar Plus products at issue in this case to authorized retailers and distributors within this State. Further, this Court has personal jurisdiction over Defendants for running their highly interactive Website in this State, without which, Plaintiff and the proposed class members were unable to ascertain the authenticity of their purchases. Finally, this Court has personal jurisdiction over Defendants because Plaintiff purchased some of the at-issue Puff Bar Plus products from friends who purchased those products directly from Defendants' Website in this State.

14.     This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to Plaintiff's claims herein occurred in this District. Moreover, Plaintiff resides in this District and, on several occasions throughout the first quarter of 2020, purchased Defendants' Puff Bar Plus vapes in this District.

---

barteens-favorite-e-cigarette-11633978700 (last accessed November 22, 2021). Governmental agencies are also investigating the roles between Defendants DS Tech and Puff Bar in causing the youth vaping pandemic. *See e.g.,* https://journalnow.com/business/local/n-c-attorney-general-expands-legal-actions-against-vaping-sector-four-triad-retailers-being-investigated/article_60958c00-470c-11ec-b67a-1fa9f30479d7.html (last accessed November 22, 2021).

## COMMON FACTUAL ALLEGATIONS

15.     On the front label of the Puff Bar Plus packaging, Defendants conspicuously

represent to consumers that the vape provides them "800 PUFFS." Similarly, on the vape's back

label, Defendants represent that the Puff Bar Plus contains "Puffs: Up to 800."



16.     By representing that the Puff Bur Plus provides "800 PUFFS"—a very specific

number—Defendants induced Plaintiff and the proposed class members into purchasing the vapes

at a premium.

17.     However, despite this representation, Defendants' Puff Bar Plus systemically fails

well before consumers are able to take 800 puffs. In fact, the Puff Bar Plus often runs out of

battery within a few hours after being unpacked. [7]

---

[7] Although under 2nd Circuit precedent in *Mantikas v. Kellogg Co*., 910 F.3d 633, 637 (2d Cir.

7

18.    Defendants knew or should have known that its Puff Bur Plus did not live up to its "800 PUFFS" representation based on dozens of reviews posted on Defendants Website which Defendants actively monitored.

19.    For example, in 2020, a verified buyer explained his issue with a "Lychee Ice" flavored Puff Bur Plus: "box said there would be 800 hits and i couldn't have gotten more than 200." [8]



20.    Another dissatisfied consumer posted a review stating that his "Peach Ice" flavored Puff Bar Plus "didn't last as long as advertised."[9]



---

2018) reasonable consumers are not "expected to look beyond misleading representations on the front of the box" to cure a Defendants' misrepresentation contained therein, the back label of the Puff Bar Plus is as equally misleading as its front label. Specifically, in the "Puffs: Up To 800" back label representation, the "800" provides what is known in consumer research as an "anchor." The "Up To" is known in the same research as an "adjustment." However, research has shown that adjustments like "Up To" are insufficient and lead to estimates that are biased in the direction of the initial anchor point—800 Puffs. (Slovic, Fischoff, and Lichtenstein, 1982); (Biswas and Burton 1994) (when asked what the maximum amount of the discount that would be expected when the "save up to 40%" option was presented, 80% of the respondents estimated that the maximum level of the actual discount would be 40-49%). In other words, consumers are biased toward the 800 Puffs anchor from the statement "Puffs: Up to 800" and interpret it to mean that they would get 800 Puffs from their Puff Bar Plus vapes. Defendantss' Puff Bar Plus vapes, which fail to hold a charge for long, and then not at all, do not provide the expected 800 puffs longevity. As a result, Defendants' back label representations are equally false and misleading to consumers.
[8] https://web.archive.org/web/20200612165731/https://puffbar.com/collections/enjoy-puff-plus-7-flavors/products/puff-bar-plus-lychee-ice (last accessed August 23, 2021).
[9] https://web.archive.org/web/20200612165344/https://puffbar.com/collections/enjoy-puff-plus-7-flavors/products/peach-ice-puff-bar-plus (last accessed August 23, 2021).

21.     Yet another dissatisfied consumer posted a review stating that his "Mixed Berries" flavored Puff Bar Plus "died when there was still juice in the cotton."[10]



22.     Finally, another dissatisfied consumer posted a review stating that her "Cool Mint" flavored Puff Bar Plus "went out within a night. Just stopped working."[11]

23.     Aside from Defendants' Website, consumers across the country voiced their dissatisfaction regarding the Puff Bar Plus longevity on social media outlets. Among other threads on the popular social medial platform called Reddit, one thread captioned "Puff Plus battery life is a joke" contains 45 comments of dissatisfied consumers.[12]

24.     Defendants knew that their "800 PUFFS" representation regarding the Puff Bar Plus was false and misleading. Specifically, after Defendant Puff Bar relaunched its Website in February of 2021 (after a temporary hiatus due to the FDA's scrutiny of the company) Defendant Puff Bar addressed the issues regarding the longevity of its vapes in the "FAQ" tab of the Website. There, Defendant Puff Bar reaffirmed that the Puff Bar Plus contains "a bigger 550 mAh battery that gives you up to 800 puffs!" but advised its consumers that "the bottom line is your

---

[10] https://web.archive.org/web/20200317233106/https://puffbar.com/collections/enjoy-puff-plus-7-flavors/products/mixed-berries-puff-bar-plus (last accessed August 23, 2021).
[11] https://web.archive.org/web/20200612165116/https://puffbar.com/collections/enjoy-puff-plus-7-flavors/products/cool-mint-puff-bar-plus
[12] https://www.reddit.com/r/Puffbar/comments/g020l3/puff_plus_battery_life_is_a_joke/ (last accessed August 23, 2021).

usage will vary depending on your vaping habits."[13] As a result, Defendant Puff Bar

recommended the following to make the Puff Bar Plus last as long as it should:

> **Take Smaller Hits**: When you take smaller hits from your Puff Bar, you can
> actually make it last longer.  This is because shorter, smaller hits keep the cotton
> wicking system that holds the nicotine from drying out too quickly.  You may think
> you're getting the most for your money when you take long, deep puffs, and we get
> it. But the truth is it places a greater demand on the battery, and longer hits can heat
> the wick more and make it dry out faster.[14]

25.    Despite their acknowledgment that the Puff Bar Plus cannot reliably provide "800

PUFFS" due to technical issues unbeknownst to a regular consumer, Defendants failed to provide

that disclosure anywhere in the Puff Bar Plus packaging—the only advertisement that Plaintiff,

and most other consumers, were privy to when they purchased Defendants' vapes in retail stores

across the country.

26.    Furthermore, at all relevant times herein, Defendants Website failed to disclose that

the Puff Bar Plus's longevity would vary based on how its consumers used the vape. Instead, the

previous FAQ tab on Defendants' Website stated that "[t]he length of time a Puff Bar lasts

depends on which of the two types of devices you're using: the original Puff Bar device or the

Puff Bar Plus."[15]

27.     As such, even if Plaintiff had visited Defendants Website before he purchased the

Puff Bar Plus vapes, neither he nor the proposed class members would have discovered that the

---

[13] https://puffbar.com/blogs/vape-news/how-long-does-a-puff-bar-last-and-how-can-you-make-it-last-longer (last accessed August 23, 2021).
[14] *Id.*
[15] https://web.archive.org/web/20200612161946/https://puffbar.com/blogs/vape-news/how-long-does-a-puff-bar-last-and-how-can-you-make-it-last-longer (last accessed August 23, 2021). Although the Website recommended for Defendants' consumers to take "shorter hits" in order to prevent "the wicking system in your device from drying out too quickly" and to reduce "demand on the battery" it did so within the context of "how to make a Puff Bar last longer." Conversely, nothing in that disclosure would have placed a reasonable consumer on notice that taking longer hits would make the Puff Bar Plus vape come short of its "800 PUFFS" guarantee.

"800 PUFFS" guarantee was conditioned on the highly technical interaction of their vaping habits with the mechanical intricacies of the Puff Bar Plus vapes. Instead, Plaintiff reasonably believed that the Puff Bar Plus longevity would conform to the "800 PUFFS" guarantee evidenced on the product's packaging—which, as set forth above, routinely failed by substantial margins.

## CLASS ACTION ALLEGATIONS

28.    Plaintiff brings this action on behalf of himself and all other similarly situated persons pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3).

29.    The class periods shall be defined from the date of the filing of this Complaint, back to any such time the Court deems appropriate.

30.    Plaintiff seeks to represent all persons in the United States who purchased Defendants' Puff Bar Plus (the "Class").

31.    Plaintiff also seeks to represent a subclass of all Class members who purchased Defendants' Puff Bar Plus in New York (the "New York Subclass") and in Florida (the "Florida Subclass") (collectively with the Class, the "Classes").

32.    The Classes do not include (1) persons who purchased Defendants' Puff Bar Plus for the purpose of resale; (2) Defendants, its officers, and/or its directors; or (3) the Judge to whom this case is assigned and the Judge's staff.

33.    Plaintiff reserves the right to amend the above class definitions and add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

34.    ***Community of Interest***: There is a well-defined community of interest among members of the Classes, and the disposition of the claims of these members of the Classes in a single action will provide substantial benefits to all parties and to the Court.

35.    **Numerosity**: While the exact number of members of the Classes is unknown to Plaintiff at this time and can only be determined by appropriate discovery, upon information and belief, members of the Classes number in the millions. The precise number of members of the Classes and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third-party retailers and vendors.

36.    **Existence and predominance of common questions of law and fact:** Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individuals of the Classes. These common legal and factual questions include, but are not limited to:

(a) Whether the Puff Bar Plus is defective;

(b) Whether Defendants knew of the Puff Bar Plus's defective nature;

(c) Whether Defendants breached the express warranties on the Puff Bar Plus packaging;

(d) Whether Defendants' representation that the Puff Bar Plus has a longevity of "800 PUFFS" is false and misleading in violation of New York's and Florida's consumer-protection statutes;

(e) Whether Plaintiff and the members of the Classes have suffered damages as a result of Defendants' actions and the amount thereof;

(f) Whether Plaintiff and the members of the Classes are entitled to statutory damages;

(g) Whether Plaintiff and the members of the Classes are entitled to restitution;

(h) Whether Plaintiff and the members of the Classes are entitled to injunctive relief to enjoin Defendants from further engaging in these wrongful practices; and

(i) Whether Plaintiff and the members of the Classes are entitled to attorney's fees and costs.

37.    ***Typicality:*** The claims of the named Plaintiff are typical of the claims of other members of the Classes in that the named Plaintiff was exposed to Defendants' false and misleading marketing, purchased Defendants' defective Puff Bar Plus, and suffered a loss as a result of that purchase.

38.    ***Adequacy***: Plaintiff will fairly and adequately represent and protect the interests of the Classes as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff is an adequate representative of the Classes because he has no interests which are adverse to the interests of the members of the Classes. Plaintiff is committed to the vigorous prosecution of this action and, to that end, Plaintiff has retained skilled and experienced counsel, and by providing a cure-notice to Defendants regarding the Puff Bar Plus defects on behalf of the members of the Classes to protect their interests.

39.    ***Superiority:*** A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

(a) The expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek to redress their claims other than through the procedure of a class action;

(b) If separate actions were brought by individual members of the Classes, the resulting duplicity of lawsuits would cause members to seek to redress their claims other than through the procedure of a class action; and

(c) Absent a class action, Defendantss likely would retain the benefits of their wrongdoing, and there would be a failure of justice.

## CAUSES OF ACTION

### COUNT I
### Violation of The Magnuson-Moss Warranty Act,
### 15 U.S.C. § 2301, *et seq.*
### (On Behalf of Plaintiff and the Class)

40.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

41.     Puff Bar Plus vapes are consumer products as defined in 15 U.S.C. § 2301(1).

42.     Plaintiff and the Class members are consumers as defined in 15 U.S.C. § 2301(3).

43.     Defendants are suppliers and warrantors as defined in 15 U.S.C. §§ 2301(4) and (5).

44.     Defendants provided Plaintiff and Class "written warranties" in the Puff Bar Plus packaging within the meaning of 15 U.S.C. § 2301(6)(A).

45.     15 U.S.C. § 2310(d)(3)(C) is satisfied because Plaintiff properly invokes jurisdiction under the Class Action Fairness Act ("CAFA").

46.     15 U.S.C. § 2310(e) is satisfied because Plaintiff provided Defendants a reasonable opportunity to cure the defects contained in the Puff Bar Plus by sending Defendants a cure notice outlining those defects in full via certified mail on July 20, 2021.

47.     On the front label of the Puff Bar Plus packaging, Defendants expressly warranted that Puff Bar Plus provides "800 PUFFS."

48.     That statement became the basis of the bargain for Plaintiff and the Class members because it is a factual statement that a reasonable consumer would consider material when purchasing a non-rechargeable disposable vape.

49.     Defendants breached this express warranty by delivering Puff Bar Plus vapes that systematically failed to provide consumers 800 puffs.

50.     As a direct and proximate result of Defendants' breaches of their express written warranties, Plaintiffs and the Class members have been damaged in an amount to be proven at trial.

## COUNT II
### Violation of New York G.B.L. § 349
### (On Behalf of Plaintiff and the New York Subclass)

51.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

52.     New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

53.     In its sale of Puff Bar Plus throughout the State of New York, at all relevant times herein, Defendants conducted business and trade within the meaning and intendment of New York's General Business Law § 349.

54.     Plaintiff and members of the New York Subclass are consumers who purchased the Puff Bar Plus from Defendants for their personal use.

55.     By the acts and conduct alleged herein, Defendants engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting the longevity of the Puff Bar Plus vapes on their packaging (i.e., that they would last "800 PUFFS.")

56.     Furthermore, Defendants failed to provide adequate disclosures that the "800 PUFFS" guarantee was conditioned on the highly technical interaction between their consumers' vaping habits and the mechanical intricacies of the Puff Bar Plus vapes.

57.     The foregoing deceptive acts and practices were directed at consumers.

58.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the actual lifespan of the Puff Bar Plus vapes.

59.     As a result of Defendants' deceptive practices, Plaintiff and the New York
Subclass members suffered an economic injury because (a) they would not have purchased the
Puff Bar Plus had they known that Defendants' representation regarding the longevity of the vape
was false, and (b) they overpaid for the Puff Bar Plus on account of such misrepresentation.

60.     On behalf of himself and other members of the New York Subclass, Plaintiff seeks
to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty
dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

### COUNT III
### Violation of New York G.B.L. § 350
### (On Behalf of Plaintiff and the New York Subclass)

61.     Plaintiff incorporates by reference each of the allegations contained in the
foregoing paragraphs of this Complaint as though fully set forth herein.

62.     New York's General Business Law § 350 prohibits false advertising in the conduct
of any business, trade, or commerce.

63.     Defendants violated New York General Business Law § 350 by falsely advertising
on the Puff Bar Plus packaging that the Puff Bar Plus would provide consumers "800 PUFFS"
when, in fact, it systematically failed to do so.

64.     The foregoing advertising was directed at consumers and was likely to mislead a
reasonable consumer acting reasonably under the circumstances.

65.     Defendants' misrepresentation has resulted in consumer injury or harm to the
public interest.

66.     As a result of Defendants' false advertising, Plaintiff and the New York Subclass
members suffered an economic injury because (a) they would not have purchased the Puff Bar
Plus had they known that Defendants' representation regarding the longevity of the vape was
false, and (b) they overpaid for the Puff Bar Plus on account of such misrepresentation.

67.     On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## COUNT IV
### Violation of Florida's Deceptive and Unfair Trade Practices Act
### Fla. Stat. § 501.201, *et seq.*, ("FDUTPA")
### (On Behalf of Plaintiff and the Florida Subclass)

68.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

69.     Plaintiff and the Florida Subclass members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

70.     By selling the Puff Bar Plus vapes throughout the state of Florida, Defendants engaged in "trade" or "commerce" within the meaning of Fla. Stat. § 501.203(8).

71.     The FDUTPA provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. § 501.204(1).

72.     By the acts and conduct alleged herein, Defendants engaged in unfair and deceptive acts and practices, which include, without limitation, misrepresenting on the Puff Bar Plus packaging that the Puff Bar Plus vapes would provide consumers "800 PUFFS" when, in fact, they systematically failed to do so.

73.     Furthermore, Defendants failed to provide adequate disclosures that the "800 PUFFS" guarantee was conditioned on the highly technical interaction between their consumers' vaping habits and the mechanical intricacies of the Puff Bar Plus vapes.

74.     As a result of Defendants' deceptive practices, Plaintiff and the Florida Subclass members suffered an economic injury because (a) they would not have purchased the Puff Bar

Plus had they known that Defendants' representation regarding the longevity of the vape was false, and (b) they overpaid for the Puff Bar Plus on account of such misrepresentation.

75.     On behalf of himself and the Florida Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

(a)     For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Classes; and naming Plaintiff's attorney as Class Counsel to represent the Classes;

(b)     For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(c)     For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(d)     For prejudgment interest on all amounts awarded;

(e)     For an order of restitution and all other forms of equitable monetary relief;

(f)     For injunctive relief as pleaded or as the Court may deem proper; and

(g)     For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated:  November 22, 2021                Respectfully submitted,

                                         **GUCOVSCHI LAW, PLLC**

                                         By:    _/s/ Adrian Gucovschi_
                                                    Adrian Gucovschi

                                         Adrian Gucovschi
                                         630 Fifth Avenue, Suite 2000
                                         New York, NY 10111
                                         Telephone: (212) 884-4230
                                         Facsimile: (212) 884-4230
                                         E-Mail: adrian@gucovschi-law.com

                                         *Attorney for Plaintiff*

EXHIBIT A

 Gmail

Adrian Gucovschi <adrian@gucovschi-law.com>

**Fwd: Your Puff Bar Wholesale Application Has Been Accepted**

1 me    age

████████████████████  ███                              ████████████

████████████

Begin forwarded me    age

**From:** Puff Bar Wholesale <wholesale@puffbar.com>
**Date:** June 3, 2020 at 2:10:40 PM CST
**To:** ███████████████████████
**Subject** Your Puff Bar Whole ale Application Ha  Been Accepted

PUFF BAR

                                                        VIEW IN BROWSER

                                            SHOP    ABOUT    LEARN

# YOUR APPLICATION
# HAS BEEN ACCEPTED.

PLEASE TAKE THE NEXT STEP IN BECOMING A
PUFF BAR AUTHORIZED RETAILER.

[ CONTINUE ]



# BEST SELLING
# DISPOSABLE OF ALL TIME

Smoother. Better.

[ CONTINUE ]

# JOIN PUFF BAR RETAILERS
# FOR AMAZING PERKS



**EASY ONLINE
ORDERING**



**CONSISTENT
SUPPLY**



**AUTHORIZED
RETAILER**



**FAST
SHIPPING**

**PERSONAL WHOLESALE
CONCIERGE**

**100% SECURE
CHECKOUT**

CONTINUE



**WARNING: This product contains nicotine.
Nicotine is an addictive chemical.**

101 N Verdugo Rd #11001 Glendale, CA 91226

W W W . P U F F B A R . C O M

email preferences    unsubscribe    terms of service    privacy policy